UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| *ScanSource, Inc.,*<br><br>       Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>*Courier Plus, Inc., d/b/a Dutchie,*<br><br>       Defendant/Counterclaim-Plaintiff. | Civil Action No. 6:23-cv-03805-TMC<br><br>**ANSWER AND COUNTERCLAIM OF DEFENDANT/COUNTERCLAIM-PLAINTIFF COURIER PLUS, INC., d/b/a DUTCHIE** |

Defendant/Counterclaim-Plaintiff Courier Plus, Inc., d/b/a Dutchie ("Dutchie"), by and through its attorneys, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., hereby responds as follows to the Complaint dated June 30, 2023 of Plaintiff/Counterclaim-Defendant ScanSource, Inc. ("ScanSource"):

## DEMAND FOR JURY TRIAL

Dutchie demands a jury trial upon each and every issue triable by a jury that is alleged within the Complaint or its Counterclaim.

## FOR A FIRST DEFENSE

Dutchie denies each and every allegation contained in the Complaint not expressly admitted, explained or modified herein.

1.      Responding to paragraph 1, Dutchie admits the allegations contained therein upon information and belief.

2.      Responding to paragraph 2, Dutchie admits the allegations contained therein.

3.       Responding to paragraph 3, Dutchie avers that paragraph 3 asserts conclusions of law to which no response is required.  To the extent a response is required, Dutchie responds the above-captioned court has personal jurisdiction over the Parties for the purposes of this dispute.

4.       Responding to paragraph 4, Dutchie avers that paragraph 4 asserts conclusions of law to which no response is required. To the extent a response is required, Dutchie responds that the parties have consented to venue in the above-captioned court.

5.       Responding to paragraph 5, Dutchie admits that ScanSource markets itself as a "hybrid technology distributor that connects businesses with cutting-edge technology solutions form the world's leading suppliers" but lacks sufficient information to admit or deny the allegations therein.

6.       Responding to paragraph 6, Dutchie admits the allegations contained therein.

7.       Responding to paragraph 7 and 8, Dutchie admits the parties entered into the Customer Agreement on or about September 28, 2021, and respectfully refers the Court to the contents of that agreement for its terms. Dutchie lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding what actions ScanSource took without Dutchie's knowledge and otherwise denies the allegations therein.

8.       [INTENTIONALLY LEFT BLANK]

9.       Responding to paragraph 9, Dutchie admits the allegations in the first sentence, except denies any characterization of the products as "custom made or custom configured," and denies knowledge or information sufficient to form a belief as to the truth of the allegations in the second and third sentences.

10.      Responding to paragraph 10, Dutchie avers that paragraph 10 asserts conclusions of law to which no response is required. To the extent a response is required, Dutchie notes that

it is not a party to the Elo Agreement, and that it was not provided to Dutchie during the course of the parties' relationship.  Dutchie denies the allegations in paragraph 10, except admits that the quoted language appears in the Elo Agreement.

11.     Responding to paragraph 11, Dutchie admits the parties discussed the purchase of these types of products, but denies any characterizations of the products as "custom" and Plaintiff's attempts to label the products as "Custom Products."

12.     Responding to paragraph 12, Dutchie denies the allegations in the first sentence and denies knowledge or information sufficient to form a belief as to the truth of the other allegations as to practice in Elo's industry.

13.     Responding to paragraph 13, Dutchie admits that it had direct discussions with Elo about certain product at some point in time, but denies the allegations in this paragraph as they are overly broad and too vague to accurately respond to, and denies the suggestion that Dutchie discussed whether all of the product ordered was "custom," "non-cancellable" or "non-returnable" with Elo.

14.     Responding to paragraph 14, Dutchie respectfully refers the Court to the November 18, 2021 purchase order for its contents, as the document speaks for itself.  Dutchie otherwise denies the allegations of paragraph 14, except that it admits it increased the volume of the original purchase order on or around December 22, 2021.

15.     Responding to paragraph 15, Dutchie denies knowledge or information sufficient to form a belief as to the truth of the allegations, but admits that ScanSource did not order all of the product Dutchie sought in the November 18, 2021 PO, and admits that Dutchie made some payment to ScanSource.

16.     Responding to paragraph 16, Dutchie denies the allegations contained therein, except admits that ScanSource and Dutchie did negotiate a First Supplement to the Customer Agreement ("Supplemental Agreement").

17.     Responding to paragraph 17, Dutchie denies the allegations contained therein, except admits that ScanSource and Dutchie signed the Supplemental Agreement after November 30, 2021.  Dutchie lacks knowledge and information to respond as to ScanSource's agreements with Elo, and refers the Court to the agreements for their terms.

18.     Responding to paragraphs 18 and 19, Dutchie responds that, to the extent ScanSource is alleging that the language suggests a certain interpretation or outcome, the paragraphs assert conclusions of law to which no response is required.  To the extent that a response is required, Dutchie admits only that the quoted language appears in the Supplemental Agreement, but otherwise denies the allegations.

19.     [INTENTIONALLY LEFT BLANK]

20.     Responding to paragraph 20, Dutchie admits it provided the required forecast information, but otherwise denies the allegations contained therein.

21.     Responding to paragraph 21, Dutchie denies the allegations contained therein.

22.     Responding to paragraph 22, Dutchie denies knowledge or information sufficient to form a belief as to the truth of the allegations.

23.     Responding to paragraph 23, Dutchie admits that it had direct discussions with Elo about certain product at some point in time, but otherwise denies the allegations therein.

24.     Responding to paragraph 24, Dutchie admits that the quoted language appears in a January 26, 2022 email from Dutchie to ScanSource.

25.     Responding to paragraph 25, Dutchie denies knowledge or information sufficient to form a belief as to the truth of the allegations.

26.     Responding to paragraph 26, Dutchie respectfully refers the Court to the May 5, 2022 PO, which speaks for itself.  Dutchie otherwise denies the allegations of paragraph 26.

27.     Responding to paragraph 27, Dutchie denies knowledge or information sufficient to form a belief as to the truth of the allegations.

28.     Responding to paragraph 28, Dutchie respectfully refers the Court to the June 16, 2022 PO, which speaks for itself.  Dutchie otherwise denies the allegations of paragraph 28.

29.     Responding to paragraph 29, Dutchie denies knowledge or information sufficient to form a belief as to the truth of the allegations.

30.     Responding to paragraph 30, Dutchie admits that it sent correspondence on or about November 10, 2022 to ScanSource, and respectfully refers the Court to the contents of the November 10, 2022 email, which speaks for itself.  Dutchie denies the other allegations in paragraph 30, including the characterization of the products as "custom."

31.     Responding to paragraph 31, Dutchie denies knowledge or information sufficient to form a belief as to the truth of the allegations.

32.     Responding to paragraph 32, Dutchie denies knowledge or information sufficient to form a belief as to the truth of the allegations.

33.     Responding to paragraph 33, Dutchie denies knowledge or information sufficient to form a belief as to the truth of the allegations, but admits that ScanSource invoiced Dutchie during the relevant time period.

34.     Responding to paragraph 34, Dutchie avers that paragraph 34 asserts conclusions of law to which no response is required. To the extent a response is required, Dutchie denies the

allegations in paragraph 34, except Dutchie denies knowledge or information sufficient to form a belief as to the truth of the allegations in the last sentence.

35.     Responding to paragraph 35, Dutchie denies knowledge or information sufficient to form a belief as to the truth of the allegations, but admits that ScanSource invoiced Dutchie during the relevant time period.

36.     Responding to paragraph 36, Dutchie avers that paragraph 36 asserts conclusions of law to which no response is required. To the extent a response is required, Dutchie denies knowledge or information sufficient to form a belief as to the truth of the allegations.

37.     Responding to paragraph 37, Dutchie denies knowledge or information sufficient to form a belief as to the truth of the allegations.

38.     Responding to paragraph 38, Dutchie denies knowledge or information sufficient to form a belief as to the truth of the allegations.

39.     Responding to paragraph 39, Dutchie denies knowledge or information sufficient to form a belief as to the truth of the allegations.

40.     Responding to paragraph 40, Dutchie denies knowledge or information sufficient to form a belief as to the truth of the allegations.

41.     Responding to paragraph 41, Dutchie denies knowledge or information sufficient to form a belief as to the truth of the allegations.

42.     Responding to paragraph 42, Dutchie admits that ScanSource communicated to Dutchie.  Dutchie otherwise avers that paragraph 42 asserts conclusions of law to which no response is required. To the extent a response is required, Dutchie denies those allegations.

43.     Responding to paragraph 43, Dutchie admits that it sent correspondence on or about January 19, 2023 to ScanSource and respectfully refers the Court to the contents of the

January 19, 2023 email, which speaks for itself. Dutchie otherwise denies the allegations of paragraph 43.

44.    Responding to paragraphs 44 and 45, Dutchie avers that paragraphs 44 and 45 assert conclusions of law to which no response is required. To the extent a response is required, Dutchie admits only that ScanSource sent correspondence on or about February 2, 2023 making claims, but denies the allegations therein.

45.    [INTENTIONALLY LEFT BLANK]

46.    Responding to paragraph 46, Dutchie denies knowledge or information sufficient to form a belief as to the truth of the allegations.

47.    Responding to paragraph 47, Dutchie avers that paragraph 47 asserts conclusions of law to which no response is required. To the extent a response is required, Dutchie denies the allegations contained therein.

48.    Responding to paragraph 48, Dutchie denies knowledge or information sufficient to form a belief as to the truth of the allegations.

49.    Responding to paragraph 49, Dutchie admits only that ScanSource has begun assessing interest as described.

50.    Responding to paragraph 50, Dutchie avers that paragraph 50 asserts conclusions of law to which no response is required. To the extent a response is required, Dutchie denies the allegations contained therein.

51.    Responding to paragraph 51, Dutchie's responses to the preceding paragraphs are realleged and incorporated by reference as if set forth in full.

52.     Responding to paragraphs 52-59, Dutchie avers the paragraphs assert conclusions of law to which no response is required. To the extent a response is required, Dutchie denies the allegations contained therein.

53.     Responding to paragraph 60, Dutchie's responses to the preceding paragraphs are realleged and incorporated by reference as if set forth in full.

54.     Responding to paragraph 61-64, Dutchie avers those paragraphs assert conclusions of law to which no response is required. To the extent a response is required, Dutchie denies the allegations contained therein, except Dutchie admits that the Customer Agreement and Supplemental Agreement constitute valid and enforceable contracts between ScanSource and Dutchie.

55.     Responding to paragraph 65, Dutchie's responses to the preceding paragraphs are realleged and incorporated by reference as if set forth in full.

56.     Responding to paragraph 66-71, Dutchie avers those paragraphs assert conclusions of law to which no response is required. To the extent a response is required, Dutchie denies the allegations contained therein.

57.     Responding to the portion of the Complaint that purports to assert a prayer for relief, Dutchie denies that Plaintiff is entitled to any form of relief requested therein.

Further, without assuming any burden of proof, persuasion or production not otherwise legally assigned to it as to an element of the claims alleged in the Complaint, Dutchie asserts additional defenses:

## **FOR A SECOND DEFENSE**

58.     Plaintiff's claims are barred for failure to satisfy the terms of the Customer Agreement and Supplemental Agreement, as set forth in Dutchie's counterclaim.

## FOR A THIRD DEFENSE

59.     Plaintiff's claims are barred by the doctrines of waiver and/or estoppel.

## FOR A FOURTH DEFENSE

60.     Plaintiff's claims are barred by its failure to mitigate its claimed damages.

## FOR A FIFTH DEFENSE

61.     Plaintiff fails to state claims for promissory estoppel and unjust enrichment because a valid contract exists between the parties as to the same subject matter.

## FOR A SIXTH DEFENSE

62.     Should Dutchie be found liable to Plaintiff, which liability is specifically denied, Dutchie is entitled to a set-off against any judgment for Dutchie's counterclaims.

## FOR A SEVENTH DEFENSE

63.     Damages, if any, are limited by the express terms of the parties' written agreements, including the express limit of any damages to the total purchase price of the Elo products paid to ScanSource by Dutchie.

## FOR AN EIGHTH DEFENSE

64.     Damages, if any, shall not include (i) any orders properly cancelled by Dutchie or (ii) November 18, 2021 orders which did not reach the end customer.

## FOR A NINTH DEFENSE

65.     Dutchie is not a party to the Elo Agreement and is not bound by its terms.   It is not responsible for ScanSource's obligations under a third-party contract.

## FOR A TENTH DEFENSE

66.    Dutchie and ScanSource did not complete or agree upon certain terms of the Product Storage Agreement, which terms ScanSource now seeks to unilaterally determine and enforce.

## FOR AN ELEVENTH DEFENSE

67.    Dutchie reserves and does not waive any and all other defenses which may be available to it.

## FOR A TWELFTH DEFENSE AND BY WAY OF COUNTERCLAIM AGAINST SCANSOURCE INC.

68.     Dutchie re-alleges paragraphs 1 through 67 as if restated verbatim within.

69.    This Court has original jurisdiction, pursuant to 28 U.S.C. § 1332 (diversity), because the parties are completely diverse and the amount in controversy exceeds $75,000.00.

70.    Dutchie asserts a compulsory Counterclaim pursuant to Federal Rule of Civil Procedure 13(a).

71.    Venue is proper in this Court as set forth in the agreements executed between Dutchie and ScanSource.  ScanSource has stated it is not challenging venue in this Court by not challenging removal.

72.    Dutchie provides point of sale, electronic commerce, payments, insurance and technology solutions for cannabis dispensaries.

73.    In 2021, Dutchie was searching for a partner to provide certain point of sale hardware and technology for use at its cannabis dispensaries.

74.    Before signing any agreement, ScanSource represented to Dutchie that it would be a true partner in this endeavor.  Specifically, ScanSource represented that it was a leader in

the industry and that it would provide a full suite of services to manage the relationship with Elo directly.

75.    On September 28, 2021, Dutchie entered into ScanSource's form Customer Agreement with ScanSource to purchase technology products (the "Customer Agreement").

76.    During this time period, upon information and belief, ScanSource entered into a separate agreement with technology manufacturer Elo (the "Elo Agreement").  Dutchie is not a party to the Elo Agreement and is not bound by its terms. Dutchie requested, but was not permitted, to review or understand the terms of the Elo Agreement or the nature of the contractual relationship or obligations between those parties.

77.    On or about November 18, 2021, Dutchie sent a purchase order for (1) 20,000 "Elo 15" v4 Slate & Z30 No CFD" ("All in One Monitors") and (2) 15,000 "Custom 1002L CFD + Wedge Stand: E466379 ET1002L-2UWC-1-RCTS" ("Customer Displays").  The November 28, 2021 PO stated that "payment terms will trigger when Product is shipped to end customer."

78.    Dutchie expected that the November 18, 2021 order would be promptly placed with Elo.  At best, after almost two full weeks, only a fraction of units were ordered (ScanSource Compl. at paragraphs 14, 15).  The remainder were not submitted for weeks.  This delay directly harmed Dutchie by compounding and worsening the delay in receipt of product.

79.    Dutchie repeatedly requested an order acknowledgment and confirmation that the November 18, 2021 order had been completed, but ScanSource did not provide either in a timely fashion.

80.    Dutchie had conveyed to ScanSource that the receipt of these products was time-sensitive, and that they were needed as quickly as possible.  Throughout the relationship ScanSource was unable to deliver product in a timely manner. Weeks-long delay was significant

to Dutchie because orders were already taking 6-8 months for delivery. Dutchie could have received orders (and adjusted its needs and/or subsequent orders) months earlier if they had been timely processed.

81.     Despite receipt and partial processing of the November 18, 2021 PO, ScanSource refused to process any further orders without a Supplemental Agreement, and Dutchie had no choice but to sign a new agreement or choose not to receive any of the product it needed for its business.  Following negotiation of its terms, Dutchie and Scan Source entered into a First Supplement to the Customer Agreement ("Supplemental Agreement").[1]

82.     This new requirement by ScanSource also unnecessarily delayed the production and delivery timeline, harming Dutchie.

83.     The Supplemental Agreement required that before ScanSource could place purchase orders, the orders could only be placed after Dutchie provided monthly forecasts and "after ScanSource and Dutchie mutually agree[d] in writing to accepting a purchase order."

84.     Following the execution of the Supplemental Agreement, Dutchie submitted additional POs to ScanSource.  In breach of the express terms of the Supplemental Agreement, ScanSource failed to meet this express condition set forth in the contract with respect to Dutchie's POs, and failed to provide the mutually agreed-upon written order acknowledgement. Pursuant to the terms of the Parties' agreement, these orders should not have been placed without this order acknowledgement.

85.     During the course of the parties' relationship, ScanSource also failed to perform its basic duties. Based on ScanSource's representations of the scope of the engagement and its

[1] While the parties executed the Product Storage Agreement, certain key terms were left blank to be negotiated at a later date. Those terms that were never determined or agreed-upon by the parties included key terms such as the products to be stored, the storage period, and the storage fees.

own expertise, Dutchie contracted with ScanSource to manage and run the relationship with Elo. Specifically, ScanSource was to be responsible for, *inter alia*, manufacturing plans, delivery timing, and to act as the purchasing agent responsible for the supply chain.

86.    Instead, ScanSource failed to manage the relationship as expected, failed to provide valuable feedback or management during the course of the parties' relationship, and left Dutchie to manage a relationship with Elo (while simultaneously refusing to allow a direct contractual relationship between those parties). ScanSource's bare involvement in the process was not in good faith, and Dutchie failed to receive the benefit of its bargain with ScanSource, and was harmed by its lack of management and ongoing delays.

87.    Upon information and belief, ScanSource also failed to cancel orders as directed by Dutchie on or about November 10, 2022.

88.    Upon information and belief, ScanSource is characterizing certain product as "custom" when it is, in fact, fungible to another end user with adjustment.

89.    ScanSource has also unilaterally instituted the outrageous interest rate of 12% annually for all product. Dutchie never agreed to this rate, and ScanSource's attempt to compound the harm to Dutchie is not in good faith.

### FOR A FIRST CAUSE OF ACTION
**(Breach of Contract)**

90.    Dutchie re-alleges the foregoing paragraphs 1 through 89, as if restated verbatim herein.

91.    The Customer Agreement and Supplemental Agreement (the "Agreements") constitute valid and enforceable contracts between ScanSource and Dutchie.

92.    Dutchie has justifiably performed its obligations under the contracts.

93.     ScanSource breached the contracts by failing to timely place orders, and failing to abide by the express terms of the Agreements.  ScanSource has also breached the implied covenant of good faith and fair dealing inherent in all contracts as alleged above, specifically by, *inter alia*, failing to provide services as represented and as contemplated by the parties' contracts, by failing to cancel or adjust orders as required by the contract and/or applicable law, and by unilaterally installing an outrageous interest rate.

94.     ScanSource's breach of the contracts has damaged Dutchie in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, having fully answered the Plaintiff's Complaint and asserted its Counterclaim, Dutchie prays this Court enter the following relief:

(a)     Dismiss Plaintiff's Complaint with prejudice;

(b)     Award Dutchie the damages for breach of contract contained within its Counterclaim in an amount to be determined at trial;

(c)     Award Dutchie reasonable attorneys' fees and costs associated with this action;

(d)     For all such other and further relief this Court deems just and proper.


Dated this 31st day of August, 2023.

Respectfully submitted,

OGLETREE, DEAKINS, NASH,
  SMOAK & STEWART, P.C.

s/ *W. Kyle Dillard*
W. Kyle Dillard (Fed.I.D. # 7941)
300 North Main Street
Post Office Box 2757
Greenville, South Carolina 29602
Telephone: (864) 271-1300
Facsimile: (864) 235-8806
kyle.dillard@ogletree.com


*Attorneys for Defendant Courier Plus, Inc., d/b/a*
  *Dutchie*